UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SADDLE CREEK ENERGY DEVELOPMENT, | § § § | |
| *Appellant*, | § § | |
| v. | § § | CIVIL ACTION H-07-MC-217 |
| EAGLE DOMESTIC DRILLING OPERATIONS, AND BLAST ENERGY SERVICES, INC., | § § § § § | |
| *Appellee*. | § | |

| | | |
|---|---|---|
| IN RE: | § § | |
| BLAST ENERGY SERVICES, INC. | § § § | BANKRUPTCY CASE NO. 07-30424-H4-11 |
| EAGLE DOMESTIC DRILLING OPERATIONS | § § § | BANKRUPTCY CASE NO. 07-30426-H4-11 |
| *Debtors* | § § § § § § | JOINTLY ADMINISTERED CHAPTER 11 UNDER BANKRUPTCY CASE NO. 07-30424-H4-11 |

**ORDER**

Pending before the court are Saddle Creek Energy Development's motion for leave to appeal (Dkt. 6), motion to stay (Dkt. 7), and emergency motion to withdraw as counsel of record (Dkt. 11). After considering the motions of the parties and the applicable law, the court has decided that Saddle Creek's motion for leave to appeal will be DENIED. Accordingly, Saddle Creek's motion for stay and Saddle Creek's counsel's emergency motion to withdraw will both be DENIED AS MOOT.

## BACKGROUND

Eagle Domestic Drilling Operations is a debtor in the above-referenced Chapter 11 bankruptcy proceeding. Although the parties do not agree on the underlying facts of the case, the areas of overlap in their recitations suggest that the facts are basically as follows. Eagle and Saddle Creek entered into a drilling contract under which Eagle would perform various drilling services for Saddle Creek. After a period of time, the contractual relationship between the parties became strained. Eagle claims that Saddle Creek owes it over $3 million under the contract. After filing for Chapter 11, Eagle continued its efforts to collect upon the debt it believes Saddle Creek owes.

As part of this effort, Eagle filed a motion for turnover pursuant to 11 U.S.C. § 542.[1] From the inception of its reluctant participation in the bankruptcy proceeding, Saddle Creek fought the turnover process. Mainly, it expended great effort arguing to the bankruptcy court that it had not received proper notice, depriving it of due process. Saddle Creek also argued that its liability to Eagle, if any, under the contract should be decided in an adversary proceeding rather than a turnover motion hearing. However, in the meantime, it has also participated in sporadic settlement negotiations with Eagle.

After a break at a hearing before the bankruptcy court on January 31, 2007, the parties returned and announced in open court that they had reached a partial settlement. *See* BK Dkts. 74

---

[1] Section 542 reads in relevant part:

> [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b).

& 121. Saddle Creek agreed to pay Eagle the sum of $403,000.00 on or before February 1, 2007. The bankruptcy court continued the hearing until February 5, 2007 to allow time for the parties to negotiate settlement of the remaining issues. On February 5, 2007 the parties informed the bankruptcy court that Saddle Creek had failed to make the payment. No excuse was given.[2] The bankruptcy court, citing Fifth Circuit case law directly on point and explaining that "oral agreements constitute the grease that make[] the wheels of the bankruptcy system operate efficiently and effectively," ordered that the settlement agreement would be enforced. BK Dkt. 74. Saddle Creek was ordered to pay Eagle $403,000.00 by February 7, 2007. Also, the bankruptcy court issued an order to show cause why sanctions should not be imposed. Saddle Creek paid Eagle by the new deadline. BK Dkt. 78. Shortly after that, Saddle Creek severed its relationship with its counsel and retained new counsel. BK Dkt. 84.

On March 1, 2007, the bankruptcy court held a hearing with the parties. Saddle Creek repeated its due process arguments to convert the turnover motion into an adversary proceeding. However, it also volunteered that it would be willing to go forward with the adversary proceeding on an expedited basis. In reliance on Saddle Creek's representations, the bankruptcy court issued the following order:

> [T]his Court has determined to continue hearing the Turnover Motion as filed by [Eagle], but will treat the Turnover Motion, for purposes of due process, as if it had

---

[2] In later pleadings the failure would be described alternately as (1) a miscommunication between Saddle Creek and its counsel, and (2) a misinterpretation on the part of the bankruptcy court of the coloquy by Eagle's counsel. *See* BK Dkt. 151 & Dkt. 1. A review of the transcript of the January 31, 2007 hearing reveals that the latter, at least, is not the case. *See* BK Dkt. 123, at 87. At the hearing, Eagle's counsel recited the terms of the partial agreement. When the bankruptcy court asked Saddle Creek's counsel whether he had any modifications to make to the recital, counsel replied, "I think [Eagle's counsel] has very accurately set forth the fundamental agreement." *Id.* This court finds no ambiguity in the statement of Eagle's counsel.

> been filed as an adversary proceeding. This does not mean that the Court is assigning an adversary proceeding number to the Turnover Motion; rather, it means that the Turnover Motion will continue on the docket of the main case but will receive the identical, equivalent procedural due process that a normal adversary proceeding tried under an expedited scheduling order would receive in this Court.

BK Dkt. 172. In the same order, the bankruptcy court issued a scheduling order reflecting the transformation of the motion to an adversary proceeding in all but name.

On March 29, Saddle Creek filed a (1) motion to dismiss for failure to state a claim, defective service of process, failure to join indispensable parties, and failure to properly plead, (2) motion for more definite statement, and (3) objections to the scheduling order. BK Dkts. 257 & 272.[3] Saddle Creek moved for dismissal under Bankruptcy Rule 7012(b)(4) and (5) because it argued that an adversary proceeding was the proper proceeding to address its contract with Eagle. Therefore service should have been made pursuant to Rule 7004 for an adversary proceeding. Because it was not served in this fashion, Saddle Creek argues that it has not been properly served. Also, Saddle Creek moved for dismissal under Rule 7012(b)(6). Contrary to its representation to the bankruptcy court on January 31, 2007 that the $403,000.00 was a partial settlement, Saddle Creek now claimed in its motion that the $403,000.00 it paid Eagle was in satisfaction of <u>all</u> disputed and undisputed amounts due under the drilling contract. Thus, Saddle Creek argued that there was no set of facts under which Eagle could recover more funds. Additionally, Saddle Creek moved for a more definite statement stating that the turnover motion pleading was not sufficient. And last, Saddle Creek moved for dismissal for failure to join indispensable parties. It argued that the amount due under the contract was actually owed to third party contractors. Therefore, Saddle Creek urged the bankruptcy court

---

[3] The bankruptcy court dismissed the motions at docket number 257 for failure to comply with the local rules. Saddle Creek corrected and refiled the same motions at docket number 272.

that the third parties were necessary to effect complete relief among the parties and must be joined. The bankruptcy court denied the motions. BK Dkt. 304.

Saddle Creek immediately sought leave from this court to file an interlocutory appeal of the bankruptcy court's denial of the motions to dismiss. Dkt. 1 Also, Saddle Creek requested a stay of the turnover-motion-turned-adversary-proceeding while the order was appealed. The bankruptcy court, in order to make a complete record of Saddle Creek's representations to it, vacated its order denying the motions to dismiss with the intention of reissuing it later in fuller detail. BK Dkt. 317. Once the order denying the motions was vacated, this court denied Saddle Creek's motions for leave to appeal and for stay as moot. Dkt. 4. However, once the amended order was issued by the bankruptcy court, Saddle Creek again moved this court for leave to appeal and stay of the turnover proceedings. Dkts. 6 & 7. Therefore, currently before this court is Saddle Creek's motion for leave to file an interlocutory appeal of the bankruptcy court's denial of its motions to dismiss.[4]

## ANALYSIS

Section 158 of Title 28 gives parties in bankruptcy actions the ability to appeal to the district court. 28 U.S.C. § 158. "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . with leave of the court, from other

---

[4] Notably, before Saddle Creek moved this court for leave to appeal, it consented to mediation with Eagle. BK Dkt. 289. In its motion for leave, it promised the court that if the bankruptcy court approved the settlement terms, Saddle Creek would dismiss its motion for leave and motion to stay. Dkts. 6 & 7. However, when the time came for the bankruptcy court to approve the settlement, Saddle Creek followed its disturbing pattern and claimed it could not comply with the settlement agreement it had signed. BK Dkts. 389, 391 & 392. The bankruptcy court issued an order enforcing the settlement agreement and ordering Saddle Creek's principal—Charles Chandler Davis—to deliver Saddle Creek's payment of the agreed settlement amount or face civil contempt charges. BK Dkt. 484. And, although the settlement has been accepted by the bankruptcy court, Saddle Creek has not fulfilled its promise to dismiss the motions for leave and for stay.

interlocutory orders and decrees." *Id.* "The standards for granting leave from an interlocutory order of the bankruptcy court are guided by the statute governing interlocutory appeals from the district court to the circuit court." *In re MCorp Fin., Inc.*, 139 B.R. 820, 823 (S.D. Tex. 1992) (citing 28 U.S.C. § 1292(b)). Permissive interlocutory appeals may be granted based on one of two different theories.

A.      **Controlling Question of Law**

The first basis for an interlocutory appeal is derived from the statute. Section 1292(b) provides in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "In considering whether to review [an] interlocutory order, the Court [should take] due notice of the strong policy behind the finality requirement, which favors avoiding piecemeal appeals, interference with bankruptcy administration, and waste of judicial resources." *In re Global Marine, Inc.*, 108 B.R. 1007, 1009 (S.D.Tex. 1988). Generally speaking, a denial of a motion to dismiss under Rule 12(b)(6) is not appropriate for interlocutory appeal. *Morin v. Caire*, 77 F.3d 116, 119 (5th Cir. 1996). *See also In re Manhattan Inv. Fund, Ltd.*, 288 B.R. 52, 56 (Bankr. S.D.N.Y. 2002) ("[C]hallenges to the sufficiency of a pleading are not generally the appropriate subjects of interlocutory review."). In this case, the motions to dismiss would not terminate the litigation. Although ostensibly, a dismissal of the turnover motion would be a termination, in reality it would merely affect the form of the litigation—turnover motion or adversary proceeding—not the existence of the litigation. Far from advancing termination of litigation, granting the appeal would

6

serve to prolong the process and possibly even restart it as an adversary proceeding. Accordingly, it does not meet the test under Section 1292(b) for a permissive interlocutory appeal.

**B.     Collateral Order Doctrine**

The second basis for an interlocutory appeal is the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221 (1949). To qualify for review under this doctrine, "[t]he order must (1) deal with an issue that is independent from the substance of the other claims; (2) conclusively determine the question; (3) be unreveiwable on appeal from a final judgment; and (4) involve a serious and unsettled question of law." *MCorp*, 139 B.R. at 824 (citing *La. Ice Cream Dists., Inc. v. Carvel Corp.*, 821 F.2d 1031, 1033 (5th Cir. 1987)). Saddle Creek's motion for leave fails at the outset, because a denial of a motion to dismiss for failure to state a claim is reviewable on final judgment. *See, e.g., Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Furthermore, the court sees no overriding interest present to merit an exception to the final judgment rule. *See MCorp*, 139 B.R. at 824. At the end of the day, the question becomes how much money Saddle Creek owes to Eagle, if any. If the decision of the bankruptcy court merits review, the parties still have the regular appellate process.

## CONCLUSION

Before the court is Saddle Creek's motion for leave to appeal. Dkt. 6. For the foregoing reasons, the court sees no basis to grant an interlocutory appeal. Therefore, the motion is DENIED. Also before the court is Saddle Creek's motion for stay. Dkt. 7. Because the stay is predicated on the existence on an active appeal, the motion is DENIED AS MOOT. Last, before the court is Saddle Creek's counsel's emergency motion to withdraw as counsel of record. Dkt. 11. Since, with

the denial of Saddle Creek's motion to appeal, this miscellaneous case will be closed, the motion is DENIED AS MOOT.

It is so ORDERED.

Signed at Houston, Texas on June 12, 2007.

_____
Gray H. Miller
United States District Judge